**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Benjamin Morales-Borrero [2]<br><br>Defendant. | **Crim. No. 23-248-2 (GMM)** |

**OPINION AND ORDER**

Before the Court is defendant Benjamin Morales-Borrero's ("Morales" or "Defendant") *Motion for De Novo Detention Hearing* ("Motion for De Novo Detention Hearing") (Docket No. 73), which includes a request for imposing conditions of release. The United States of America ("Government") opposed Morales' request. (Docket No. 76). Morales shall remain detained without bail pending trial.

**I.   BACKGROUND**

On June 22, 2023, a grand jury sitting in the District of Puerto Rico returned a seven count Indictment against Morales and three other defendants as follows: (1) Conspiracy to Possess with Intent to Distribute Cocaine Aboard a Vessel Subject to the Jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(b), and 21 U.S.C. § 960(b)(1)(B); (2) Possession with Intent to Distribute Cocaine Aboard a Vessel Subject to the Jurisdiction of the United States in violation of

Case 3:23-cr-00248-GMM   Document 114   Filed 12/01/23   Page 2 of 20

Crim. No. 23-248-2 (GMM)
Page -2-

46 U.S.C. § 70503(a)(1), 21 U.S.C. § 960(b)(1)(B), and 18 U.S.C. § 2; (3) Conspiracy to Import Cocaine in violation of 21 U.S.C. §§ 952(a), 960(a) and (b)(1)(B)(ii), and 963; (4) Importation of Cocaine in violation of 21 U.S.C. §§ 952(a), 960(a) and (b)(1)(B)(ii), and 18 U.S.C. § 2; (5) Conspiracy to Possess With Intent to Distribute Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii), and 846; (6) Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii), and 18 U.S.C. § 2; and (7) Failure to Heave in violation of 18 U.S.C. §§ 2237(a)(1) and (b). (Docket No. 32). Morales was charged with counts one through six. (Id.).

On June 27, 2023, the U.S. Probation Office submitted Morales' Pretrial Services Report, which recommended detention pending trial. (Docket No. 35 at 5-6). There, the U.S. Probation Office characterizes Morales as a flight risk and a danger to the community given the nature of the offense charged, his prior arrests and convictions, his probation status and lack of compliance, criminal association, amongst others. (Id.).

On June 29, 2023, U.S. Magistrate Judge Marco E. López ("Magistrate Judge") held a detention hearing where the Government moved for detention and Morales sought conditions of release. (Docket No. 45). The Court ordered Morales detained without bail. (Docket No. 44). The Court set forth the following reasons in ordering Morales' detention: (1) Morales did "not introduce any

Case 3:23-cr-00248-GMM  Document 114  Filed 12/01/23  Page 3 of 20

Crim. No. 23-248-2 (GMM)
Page -3-

evidence, or the slight evidence necessary to rebut the [applicable] presumption."; (2) the Government proved "[b]y clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community."; (3) the "[w]eight of evidence against [Morales] is strong."; (4) that Morales has a prior criminal history; and (5) "[a]t the time of the defendant's arrest, he was serving a term of probation in case 19-479 (ADC) which expires on April 10, 2027." (Id. at 2-3).

On July 18, 2023, Morales filed a *Motion for Reconsideration Re: Order of Detention Pending Trial (D.E. 44)* ("Motion for Reconsideration"). (Docket No. 55). There, Morales, arguing against detention, noted his various medical conditions[1] that he needs to follow-up at his doctors' offices, that he needs various medications, and that he is legally disabled. (Id. at 2). Morales also sustained that he submitted a proffer that complies with the burden of production in a presumption case under 18 U.S.C. § 3142(e)(3). (Id. at 2). Further, Morales argued that he tested negative to all controlled substances tests, that he has no passport, no foreign ties, that he has a stable relationship with his common law wife, and that he did not attempt to flee. (Id. at

---

[1] Morales argues that he suffers from blindness from one eye, Fibromyalgia, Neuropathic Diabetes, Retinopathy Diabetes Mellitus, Hyperlipidemia, and has had embolism over three (3) times. (Docket No. 55 at 2). The Government stipulated as such at the *de novo* detention hearing.

Case 3:23-cr-00248-GMM   Document 114   Filed 12/01/23   Page 4 of 20

Crim. No. 23-248-2 (GMM)
Page -4-

2-3). Lastly, Morales posits that while he was on bond under the supervision of the U.S. Probation Office, he complied with all the regulations and orders on bond for over two years before being sentenced to five (5) years in probation in criminal case no. 19-479 (ADC). (Id. at 3).

On August 2, 2023, the Magistrate Judge denied Morales' Motion for Reconsideration. (Docket No. 63). On September 1, 2023, Morales filed the Motion for De Novo Detention Hearing. On October 2, 2023, the Court conducted a *de novo* hearing, at the conclusion of which it maintained the status quo to review the record in more detail and to allow the Government time to submit additional information to support Morales' detention. (Docket No. 84). The Government presented additional information at Docket No. 92. Morales was given the opportunity to respond, and he did at Docket No. 107.

## II.   LEGAL STANDARD

A.   Standard of review for a detention or release order

A district court reviews a magistrate judge's order of detention or release under a *de novo* standard and "need not defer to the magistrate judge's findings or give specific reasons for rejecting them." United States v. Cidraz-Santiago, 18 F.Supp.3d 124, 126 (D.P.R. 2014) (citations omitted). A district court may also "take additional evidence or conduct a new evidentiary hearing" when "the defendant has placed relevant facts at issue." Id.

Case 3:23-cr-00248-GMM   Document 114   Filed 12/01/23   Page 5 of 20

Crim. No. 23-248-2 (GMM)
Page -5-

B.  The Bail Reform Act

    1.  Standard of Proof

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3156 ("Bail Reform Act"), provides for the pretrial detainment of persons "charged with certain serious felonies on the ground of dangerousness. . ." U.S. Tortora, 922 F.2d 880, 884 (1st Cir. 1990) (citing United States v. Zannino, 761 F.2d 52 (1st Cir. 1985)). The standard of proof for detention on the grounds of dangerousness is clear and convincing evidence. Id. § 3142(f). To obtain the pretrial detainment, "[t]he government must establish risk of flight by a preponderance of the evidence; and/or dangerousness by clear and convincing evidence." United States v. Vázquez-Cintrón, Criminal No. 19-685 (PAD), 2020 WL 1310540, at *1 (D.P.R. Mar. 17, 2020) (citing United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991)). Clear and convincing evidence as to dangerousness is "more than preponderance of the evidence but less than beyond a reasonable doubt." United States v. Acevedo-Ramos, 600 F.Supp. 501, 509 (D.P.R. 1984), aff'd, United States v. Acevedo-Ramos, 755 F.2d 203 (1st Cir. 1985).

    2.  Factors the Court must Consider

To determine if the government has met that burden, the court must consider certain factors: "(1) the nature and circumstances of the offense charged; (2) the weight of the evidence as to guilt

or innocence; (3) the history and characteristics of the accused, including past conduct; and (4) the nature and gravity of the danger posed by the person's release." Tortora, 922 F.2d at 884; *see also* 18 U.S.C. § 3142(g).

### 3. The 18 U.S.C. § 3142(e) Presumption

In cases such as this one, where a defendant is charged with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," the court must presume, "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. . ." 18 U.S.C. § 3142(e)(3)(A). A grand jury indictment is sufficient to establish probable cause for purposes of triggering the presumption. *See* United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986) ("We agree with those courts that have held that a grand jury indictment is sufficient to establish probable cause for the purposes of triggering the rebuttable presumptions in section 3142(e)."); United States v. Contreras, 776 F.2d 51, 54-55 (2d Cir. 1985) ("[A]n indictment returned by a duly constituted and unbiased grand jury satisfies the Constitution as to the existence of probable cause that the defendant committed the crimes enumerated therein.").

In cases involving drug trafficking crimes, the presumption comes from "Congress's finding that drug traffickers often have the resources and foreign contacts to escape to other countries"

Case 3:23-cr-00248-GMM   Document 114   Filed 12/01/23   Page 7 of 20

Crim. No. 23-248-2 (GMM)
Page -7-

and that "[f]orfeiture of even a large bond may be just a cost of doing business,. . .hence drug traffickers pose special flight risks." United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987); see also United States v. Dillon, 938 F.2d 1412, 1416-17 (1st Cir. 1991) (noting appellant-defendant remained risk of flight where drug organization "probably could absorb the loss of $200,000 worth of security.").

Once probable cause is found, the presumption in section 3142(e) imposes on the defendant a burden of production. See United States v. O'Brien, 895 F.2d 810, 815 (1st Cir. 1990). However, the government "retains the burden of proving that no conditions will reasonably assure the defendant's appearance" and the safety of the community. Id.; United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010). Although the burden is not heavy, the introduction of such rebuttal evidence does not destroy the presumption and instead continues "to operate as one factor to be considered by the court in determining whether the defendant must be detained." O'Brien, 895 F.2d at 815; see also Stone, 608 F.3d at 945 (classifying defendant's burden of production as "not heavy"). To that extent, judges must keep the presumption in mind as an additional factor to the four listed in Section 3142(g). See Palmer-Contreras, 835 F.2d at 18; United States v. Jessup, 757 F.2d 378, 383-84, 387 (1st Cir. 1985) (reviewing the evidence before Congress that drug offenders pose flight risk), partially abrogated on other grounds

Case 3:23-cr-00248-GMM   Document 114   Filed 12/01/23   Page 8 of 20

Crim. No. 23-248-2 (GMM)
Page -8-

by United States v. O'Brien, 895 F.2d 810 (1st Cir. 1990). In drug trafficking cases, the weight afforded to the presumption depends on how closely the defendant resembles the paradigmatic drug trafficker for whom the risk is particularly high; "the less those features resemble the congressional paradigm, the less weight the [court] will likely give to Congress's concern for flight." Jessup, 757 F.2d at 387.

### III. DISCUSSION

A.   Presumption in Morales' Case

In Morales' case, the presumption that no combination of conditions will reasonably assure the defendant's appearance, or the safety of the community applies. Morales was charged with violating the Controlled Substances Act and the Controlled Substances Import and Expert Act and faces a minimum of ten years of imprisonment. Thus, Morales bears the initial burden of showing that he is not a danger to the community or a flight risk. The Court finds that Morales met his burden.

Morales evidenced that he has strong family ties in Puerto Rico,[2] has no history of non-appearance at court proceedings, no foreign ties, does not possess a passport, has certain medical conditions that hinder his mobility, and demonstrated cooperative behavior and conduct during his detention.

---

[2] Indeed, certain members of his family were present at the *de novo* detention hearing.

Case 3:23-cr-00248-GMM   Document 114   Filed 12/01/23   Page 9 of 20

Crim. No. 23-248-2 (GMM)
Page -9-

B.   The Tortora Dangerousness Factors

The Court now considers the factors set forth in section 3142(g) of the Bail Reform Act and in Tortora, 922 F.2d at 884.

1.   The Nature and Circumstances of the Offenses Charged

The Government proceeded by factual proffer in support of its motion for a permanent order of detention. (Docket No. 76 at 3). It proffered that on June 14, 2023, at approximately 7:00 p.m., a Customs and Border Protection ("CBP") asset spotted two targets of interest ("Vessel 1 and Vessel 2") at approximately 30 nautical miles south of Puerto Rico. (Docket No. 76 at 3). CBP Air and Marine Operations ("CBP AMO") sent a patrol aircraft to the area. (Id.). The patrol aircraft located Vessel 1 and Vessel 2 about 28 nautical miles south of Puerto Rico. (Id.). While being surveilled, Vessel 1 and Vessel 2 began to head south of Puerto Rico and were last spotted at approximately 37 nautical miles of Puerto Rico before the patrol aircraft had to return to its San Juan base due to a shift change. (Id.). At approximately 9:00 p.m., CBP AMO sent a second patrol aircraft. (Id.). The patrol aircraft was able to locate Vessel 1 and Vessel 2 heading north to Puerto Rico at about 10-15 knots. (Id.). On June 15, 2023, at approximately 1:40 a.m., Vessel 1 and Vessel 2 were located 36 nautical miles from the southeast coast of Puerto Rico. (Docket No. 76 at 4).

CBP AMO then launched two maritime patrol vessels, the first from Ponce and the second one from Fajardo, and a CBP Black Hawk.

(Id.). The CBP Black Hawk and the maritime patrol vessels managed to stop Vessel 1 without incident on June 15, 2023, at approximately 11:30 a.m., and within 10-12 nautical miles of the southeast coast of Puerto Rico. (Id.). The persons onboard Vessel 1 were compliant with instructions imparted by the CBP agents. (Id.). Once the CBP agents boarded Vessel 1, they found approximately 20 bales of suspected cocaine, some of which were in plain view. (Id.). Morales was one of the persons aboard Vessel 1, along with co-defendant Josué Pagán-Díaz ("Pagán"). (Id.). Morales and Pagán were detained, and Vessel 1 was secured. (Docket No. 76 at 4).

Thereafter, the CBP Black Hawk and the maritime patrol vessels also attempted to stop Vessel 2, which was close by to Vessel 1. (Id.). Vessel 2 did not stop even after the CBP Black Hawk gave commands to do so and after having shot warning shots. (Id.). Vessel 2 did not heave and continued heading towards Puerto Rico. (Id.). The CBP Black Hawk managed to stop Vessel 2 in its movements after having made a single shot to the engine. (Id.). Once CBP agents intercepted Vessel 2, they found approximately 20 bales of suspected cocaine, some of which were in plain view. (Id.). The persons onboard Vessel 2 were identified as Edwin Ricardo Hernández ("Hernández") and Leonardo Morales-Morales ("Morales-Morales"). (Docket No. 76 at 4). Then, Vessel 2 was secured, and Hernández and Morales-Morales were detained. (Id.).

Crim. No. 23-248-2 (GMM)
Page -11-

The bales seized in Vessel 1 and Vessel 2 were the subject of field tests; they revealed the presence of cocaine. (Id.). Specifically, the cocaine seized in Vessel 1 weighted approximately 654.4 kilograms and the cocaine seized in Vessel 2 weighted approximately 604.8 kilograms. (Id. At 5).

According to the Government, the FBI's ongoing investigations indicate that: (1) Morales is one of the leaders and recruiters of the relevant Drug Trafficking Organization ("DTO"); (2) Morales was the organizer of the maritime drug venture that resulted in the arrests; (3) Morales was the one that knew the route; (4) Morales appeared to be involved in prior trips; (5) Morales knew the point where the drugs were to be picked up and delivered upon return; (6) Morales was the owner of the GPS equipment used in the drug venture; (7) the FBI is in possession of evidence that Morales and/or others in his behalf have been inquiring as to potential persons that may have compromised the maritime drug venture; and (8) DTO members, including Morales, may have been attempting to hide assets. (Id.).

In light of the above, Morales was charged with: (1) Conspiracy to Possess with Intent to Distribute Cocaine Aboard a Vessel Subject to the Jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(b), and 21 U.S.C. § 960(b)(1)(B); (2) Possession with Intent to Distribute Cocaine Aboard a Vessel Subject to the Jurisdiction of the United States

in violation of 46 U.S.C. § 70503(a)(1), 21 U.S.C. § 960(b)(1)(B), and 18 U.S.C. § 2; (3) Conspiracy to Import Cocaine in violation of 21 U.S.C. §§ 952(a), 960(a) and (b)(1)(B)(ii), and 963; (4) Importation of Cocaine in violation of 21 U.S.C. §§ 952(a), 960(a) and (b)(1)(B)(ii), and 18 U.S.C. § 2; (5) Conspiracy to Possess With Intent to Distribute Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii), and 846; and (6) Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii), and 18 U.S.C. § 2. Morales faces a 10-year mandatory minimum up to a maximum term of life imprisonment. *See* 21 U.S.C. § 960(b)(1)(B)(ii).

To summarize, according to the Government's proffer, Morales was an integral member of the DTO's effort to traffic 1,259.2 kilograms (2,776 pounds) of cocaine and faces significant penalties if he is convicted. The crime Morales' is charged with, in and of itself, constitutes a "risk to community safety" and a "danger to the community." *See* U.S. v. Caraballo, 47 F.Supp.2d 190, 192 (D.P.R. 1999) (*quoting* United States v. León, 766 F.2d 77, 81 (2d Cir. 1985) ("It is clear that the harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'"). Thus, the nature and circumstances of the charges weigh in favor of pretrial detention.[3]

---

[3] "[D]rug traffickers pose special flight risks." United States v. Palmer-Contreras, 835 F.2d at 17. (Indeed, drug traffickers "often have the resources and foreign contacts to escape to other countries." Id. According to the

Case 3:23-cr-00248-GMM   Document 114   Filed 12/01/23   Page 13 of 20

Crim. No. 23-248-2 (GMM)
Page -13-

### 2. The Weight of Evidence as to Guilt

As advanced by the Government, Morales and the other co-defendants participated in a drug trafficking maritime venture and were found in possession of <u>1,259.2 kilograms of cocaine</u>. Accordingly, the weight of the evidence favors detention.

### 3. The History and Characteristics of Morales

#### a. Morales' Family Ties

Morales is 37 years of age. (Docket No. 35 at 1). He has four (4) paternal siblings and three (3) maternal siblings. (<u>Id.</u>). Morales has been in a relationship for around two years. (<u>Id.</u> at 2). Morales and his girlfriend reside together, and she expressed her willingness to serve as a third-party custodian for Morales. (<u>Id.</u> at 2, 5). He has not procreated any children with his current girlfriend, but Morales has two (2) children from past relationships. (<u>Id.</u>). Thus, Morales argues that he has family ties in Puerto Rico. (Docket No. 73 at 9). The Court has no reason to suspect otherwise.

#### b. Morales' Medical Conditions

Morales also argues that he suffers from serious medical conditions that require "timely, specialized follow up treatment which he is not receiving at MDC." (<u>Id.</u> at 3). Notably, Morales is currently blind from one eye, losing vision in his remaining

---

Government's proffer, Morales was not a mere mule in this DTO venture but served as an organizer, recruiter, and linchpin in the DTO.

functioning eye, has fibromyalgia, neuropathic diabetes, retinopathy diabetes mellitus, hyperlipidemia, has had three (3) embolisms, his pancreas is not functioning properly, and he has high blood pressure. (Id. at 3-4). Further, Morales has problems walking and requires the use of a cane. (Id. at 4).

Considering the above, the Government provided the Court with two exhibits detailing: (1) Morales' consumption of candy, chocolates, and "junk food" in disregard of his diabetic condition; and (2) Morales' no show and refusal to subject himself to insulin treatment while being detained in MDC Guaynabo. (Docket Nos. 85-1; 85-2). Additionally, at the *de novo* detention hearing, the Government argued that Morales' medical conditions are not going to be an issue for the medical personnel of MDC Guaynabo.

        c.    Morales' Criminal History[4], Drug Use, and Mental Health

On July 23, 2019, Morales was arrested by the Puerto Rico Police Department ("PRPD") for illegally possessing a modified Glock Pistol Model 22 loaded with a 15-round capacity magazine containing 15 rounds of .40 caliber ammunition. (Criminal Case No. 19-479, Docket No. 1 ¶ 5). Morales' pistol was modified to shoot automatically. (Id.). Morales provided the PRPD officers an

---

[4] Morales has also been charged three other times due to violations of the Puerto Rico Vehicle and Transit Law. The arrests for these violations occurred on December 23, 2006, September 23, 2009, and May 6, 2010. (Docket No. 35 at 4-5).

Case 3:23-cr-00248-GMM   Document 114   Filed 12/01/23   Page 15 of 20

Crim. No. 23-248-2 (GMM)
Page -15-

additional Glock magazine with capacity for 22 rounds of .40 caliber ammunition and loaded with 21 rounds of ammunition. (Id.).

On February 21, 2020, Morales entered a straight plea to violations of 18 U.S.C. §§ 922(o) and 924(a)(2) (Illegal possession of a machine gun). (Criminal Case No. 19-479, Docket No. 39). On April 11, 2022, Morales was sentenced to a term of probation of five (5) years. (Criminal Case No. 19-479, Docket Nos. 71; 72). As part of his probation terms, Morales was obligated not to commit "another Federal, state, or local crime, and shall observe the standard conditions of probation recommended by the United States Sentencing Commission and adopted by this Court." (Criminal Case No. 19-479, Docket No. 72 at 3 ¶ 1). He violated his probation terms when he decided to participate in the relevant drug trafficking venture.

Morales has been drug tested three (3) times, as verified by the U.S. Probation Office, and all yielded negative results to all drugs tested. Morales has denied any substance abuse history, or substance abuse treatment. (Docket No. 35 at 4). Lastly, Morales indicated no history of mental health, suicidal ideations, hallucinations, gambling, or domestic violence history. (Id.).

    d. <u>Employment History, Financial Resources, and Assets</u>

Morales has been unemployed for the past seven (7) years due to being disabled. (Id. at 3). Further, Morales receives $1,260 monthly in social security for his disability, plus the additional

Case 3:23-cr-00248-GMM   Document 114   Filed 12/01/23   Page 16 of 20

Crim. No. 23-248-2 (GMM)
Page -16-

income of his consensual partner who works at an elderly caretaker center.[5] (Id.). According to the Pretrial Services Report, Morales reported a monthly expense of $1,050: $150 for his utilities and $900 for a 2018 RAM truck. (Id.). Verification of the P.R. Driver's Services Center (CESCO) revealed that he has $6,940 in pending traffic fines, and a 2018 Ford F150 Raptor registered under his name. (Id.). Lastly, as verified through the Neptuno database, Morales has four watercrafts registered under his name. (Docket No. 35 at 3).

### e. The History and Characteristics of Morales Weigh in Favor of Detention

Morales argues that he had "always complied with the conditions of release, tested negative for controlled substances at [random] tests and both times upon arrest; he has no passport, no foreign ties; and he has a stable relationship with his common law wife." (Docket No. 73 at 4). Also, Morales posits that "while he was on bond under the supervision of the U.S. Probation Office for over two (2) years in his previous case, he complied with all the USPO regulations and orders on bond for over those two (2) years." (Id.). He further argues that at the time of the arrest, he did not attempt to flee or to hide and destroy evidence. (Id.).

Although Morales has provided enough evidence to rebut the applicable presumption, the Court cannot ignore the seriousness of

---

[5] Morales' partner's monthly income was ignored by Morales in the Pretrial Services Report. (Docket No. 35 at 3).

this drug case, which is not ordinary by any means. Again, 1,259.2 kilograms of cocaine were seized from Vessel 1 and Vessel 2 during the drug trafficking venture that Morales himself helped organize. Therefore, Morales' strong family and community ties, and his stable relationship with his girlfriend, with whom he resides, did not deter him from violating his terms of probation in Criminal Case No. 19-479 and incur in the behavior that led to his indictment in this case.

Also, Morales is unemployed and solely relies on his social security payments and the income of his consensual partner, which was not reported by Morales. Without considering his partner's income, Morales barely makes enough to cover his utilities and his 2018 RAM vehicle, let alone the $6,940 in traffic fines. This fact increases the risk that he will resume drug trafficking activities if released.

Based on all the above, the history and characteristics of Morales favor detention.

    4.    <u>The Nature and Gravity of the Danger Posed to the Community by Morales' Release[6]</u>

The fourth and final factor also weighs in favor of detention. Morales alleges he should be released on bond and that his common

---

[6] Morales argues that other co-defendants were granted conditions of release. (Docket No. 73 at 10). The Court understands that Morales is not similarly situated as other co-defendants. The Government proffered that Morales was the person who devised the plan, served as the recruiter of the relevant drug venture, and the linchpin between the crew and the DTO that lost the 1,259.2 kilograms of cocaine. Furthermore, two of the three other co-defendants had no prior criminal history. (Docket Nos. 23; 30).

Case 3:23-cr-00248-GMM Document 114 Filed 12/01/23 Page 18 of 20

Crim. No. 23-248-2 (GMM)
Page -18-

law wife, who was approved as a third-party custodian, could serve as such. Yet, the Government proffers that Morales is a danger to the community. According to the Government, Morales and the DTO he belongs to may have been engaging in international narcotrafficking for some time. (Docket No. 76 at 10). Further, the DTO has been responsible for the movement of millions of dollars' worth of drugs. (Id.). Morales, the Government alleges, is whom the DTO relied on to put the relevant drug venture together. Morales is thus a trusted member, if not a leader, of the DTO overseeing Morales' drug trafficking operation.

Morales' drug trafficking venture certainly falls under what constitutes "danger" for the purposes of the Bail Reform Act. *See* León, 766 F.2d at 81; United States v. Rivera-Nieves, 265 F.Supp.3d 173, 178 (D.P.R. 2017). "As such, if released, [Morales] could have access to drug trafficking activities that pose a special risk of danger to the community." Rivera-Nieves, 265 F.Supp.3d at 178 (*citing* United States v. Kay, Criminal No. 08-267, 2008 WL 4449504, at *3 (N.D. Texas Oct. 1, 2008) (denying bail to a defendant found with 100 kilograms of cocaine in part because the evidence suggested that he was a trusted member of the conspiracy); *see also* United States v. Rojas-Batista, Criminal No. 17-596 (PAD), 2018 WL 2214743, at *4 (D.P.R. May 14, 2018); United States v. Olivieri-Nieves, Criminal No. 17-596 (PAD), 2018 WL 2146511, at *5 (D.P.R. May 9, 2018) (denying bail regardless of defendant's

physical limitations since there was a strong likelihood that, if released, defendant would have returned to drug trafficking endeavors); United States v. Sánchez-Algarín, Criminal No. 17-596 (PAD), 2018 WL 2182289, at *4 (D.P.R. May 9, 2018).

Drug and gun violence are serious issues in Puerto Rico. It is apparent that if it were not for the efforts of the CBP, Morales' operation would have put a substantial amount of cocaine in the streets of Puerto Rico. Morales, and the other co-defendants, lost 1,259.2 kilograms of cocaine. The threat, nature and circumstances of the offenses charged, the weight of the evidence and potential danger to the community, as well as Morales' potential contact with persons that may have compromised the maritime drug venture, significantly outweigh the elements raised by the defendant as to his history and characteristics in favor of release. As such, the Court is not convinced that any conditions could reasonably assure the safety of the community and even the Defendant and his family. The totality of the evidence presented at the *de novo* hearing and in the record requires detention.

## IV. CONCLUSION

The Court concludes that the Government has shown by clear and convincing evidence that no condition or combination of conditions will assure the safety of the community if Morales were to be released. The factors set forth in section 3142(g) of the

Case 3:23-cr-00248-GMM   Document 114   Filed 12/01/23   Page 20 of 20

**Crim. No. 23-248-2 (GMM)**
**Page -20-**

Bail Reform Act and in Tortora, 922 F.2d at 884 favor and support detention. Therefore, the *Order of Detention Pending Trial* at Docket No. 44 stands. Morales will remain detained without bail pending trial.

    IT IS SO ORDERED.

    In San Juan, Puerto Rico, December 1, 2023.

                                s/Gina R. Méndez-Miró
                                GINA R. MÉNDEZ-MIRÓ
                                UNITED STATES DISTRICT JUDGE